# Ferry's Appeal.

| 102 | 207 |
| --- | --- |
| 142 | 502 |

| 102 | 207 |
| --- | --- |
| 150 | 505 |

| 102 | 207 |
| --- | --- |
| 164 | 214 |

| 102 | 207 |
| --- | --- |
| 169 | 64 |

| 102 | 207 |
| --- | --- |
| 180 | 130 |

| 102 | 207 |
| --- | --- |
| 185 | 405 |

| 102 | 207 |
| --- | --- |
| 19 SC | 154 |

| 102 | 207 |
| --- | --- |
| 212 | 377 |

1. In construing a will it is not necessary for the court to consider the words, exactly in the order in which they are placed, if a different arrangement will better answer the apparent intent of the testator.

2. Regard must be had to the whole scheme of the will, and if it is found that a particular intent is inconsistent with the general intent, the former must give way to the latter.

3. No intention of the testator to die intestate as to part of his estate can be presumed, when his words as found in his will can fairly be construed to dispose of the whole of it.

4. A testator bequeathed all his property to his wife for life for her benefit, and that of his children who might be living with her. In case his estate should realize on a policy of insurance upon his life, the testator, immediately upon the death of his wife, bequeathed "unto each of his daughters who might then be married the sum of $1,000 absolutely." The will further provided that if the amount of the policy was not realized, all of the testator's property should go to such of his daughters as then remained unmarried, or were widows, share and share alike. The amount of the policy having been paid to the estate, *Held*, that the married daughters were entitled to their legacies of $1,000 only; and not to share, also, with the unmarried daughters in the residue of the estate.

January 25th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia county :* Of July Term 1882, No. 231.

Appeal of Gertrude E. F. Ferry, from a decree of said court, making distribution of the estate of Francis Scoffin, deceased.

Upon the audit of the account of the executor of Francis Scoffin, deceased, before PENROSE, J., the following facts appeared :—Dr. Francis Scoffin, the testator, died on April 26th 1875, leaving a widow, S. Matilda Scoffin, and four daughters —two unmarried, Mary Louisa and Adelaide ; and two married, Gertrude E. F., wife of William Ferry, and Francis M., wife of one Goodall. By his will, dated June 19th 1873, and duly proved, the testator, after directing his executors to sell his real estate and invest the proceeds, provided as follows :—

"I give and bequeath my personal property which may remain unsold, the interest and dividends of the investments made in pursuance of the above directions . . . . unto my beloved wife, S. Matilda, during all the term of her natural life, to be used by her as she may think proper for her benefit and the benefit of those of my children, who may be living at the time with, and while they continue to reside with, her.

"Should I be able to meet my annual payments in the Newark Mutual Insurance Company (called the life insurance company, Newark) until the period of my death, and my estate

[Ferry's Appeal.]

should realize from the said insurance company the amount of the insurance which I have effected upon my life, then, at and immediately upon the decease of my said wife, I give and bequeath unto each of my daughters who may then be married, the sum of $1,000, absolutely. . . . .

"If, however, in consequence of my inability to meet my annual payments, or for any other cause, my estate should fail to realize from the said insurance company the amount of the insurance effected upon my life, then, at and immediately upon the decease of my said wife I give, devise and bequeath all my furniture which may remain unsold and the investment or investments which may have been made as aforesaid, and the residence, if any should have been purchased, and all the rest, residue and remainder of my estate (saving and excepting the sum of $500 as hereinafter bequeathed) unto such of my daughters who may then remain unmarried, or who having married shall be widowed, their heirs, executors, administrators and assigns to be equally divided between them, if more than one, share and share alike, and if only one, then to her and her heirs, executors, administrators and assigns."

The policy of insurance was paid to the estate; and the account filed by the executors after the death of the widow, which occurred May 4th 1881, showed a balance in their hands of $16,079.87.

Mrs. Ferry claimed that she and Mrs. Goodall, after receiving their legacies of $1,000 each, were entitled also to share equally with their unmarried sisters in the remainder of the estate. Mrs. Goodall, however, disclaimed her right to anything except her legacy.

The auditing judge rejected Mrs. Ferry's claim, and after awarding to her and to Mrs. Goodall $1,000 each, distributed the balance of the estate equally between the two unmarried daughters, Mary Louisa and Adelaide.

To this award Mrs. Ferry filed exceptions, which were dismissed by the court, PENROSE, J., delivering the following opinion :

Lord HARDWICKE, in East *v*. Cook, 2 Ves. Sr. 30, said that it is an ordinary and common rule of construction in wills " not to consider exactly the order of placing the words, if it would better answer the apparent intent of the testator otherwise." The purpose and limit of this rule were ascertained by the same judge in Marlborough *v*. Godolphin, 2 Ves. Sr. 74 to be to attain the intent which appeared on the face of the will, but not to let in other devisees, where the persons to take are certain, and the only question respects the interest to be taken. In a case like the present, where the testator has clearly indicated his intended beneficiaries, and the proportions in which they shall take his entire property, but where a literal adherence to

the order of his bequests will involve an intestacy as to the greater part of his estate, there would seem to be a clear field for the application of the rule. His design, apparent on the face of the will, was to provide for his unmarried daughters, and to make the gift to those who were married, contingent upon the receipt of the insurance moneys. It was uncertain at the date of the will whether these moneys would be realized. He, therefore, in one part of the instrument, disposed of his estate as it then stood, and in another gave additional legacies in case the moneys should be received. He neglected, however, in expressing it, to give the natural and logical order of his thought. That order would have been observed if he had said : " I give to my unmarried daughters all the residue of my estate, and in case my estate shall realize the insurance upon my life, I give to each of my daughters who may be married $1,000." If the clause in which he disposes of his whole estate be made to precede the clause which was meant to be subsidiary to it, the introductory words providing for a failure to realize the insurance moneys would be unnecessary, and might safely be rejected as surplusage. Unless we so marshal his language, the gift of the residue will be defeated, and the children who most needed his bounty, and who were evidently the chief objects of his care, will receive less than those whose legacies were fixed at a specific sum, and limited upon a contingency."

Whereupon Mrs. Ferry took this appeal, assigning for error the dismissal of her exceptions and the action of the court in awarding the balance of the estate to the unmarried daughters, after payment of the legacies.

*J. Alexander Simpson*, for appellant.—In drawing his will the testator evidently had in view two different conditions of his estate : the one in which it amounted to a considerable sum, the other in which it was of little value. In the first contingency he bequeathed $1,000 absolutely to each of his married daughters and $500 to his grandson; in the other, after $500 to his grandson, the balance of his estate to his unmarried and widowed daughters. Each of these provisions were separate and independent, and one cannot be used to aid in construing the other : 1 Redfield on Wills, *461 ; Lynch *v.* Hill, 6 Munf. (Va.) 114 ; Liston *v.* Jenkins, 2 W. Va. 62. While it is true that a will must be construed so as to prevent intestacy if possible, yet where words are omitted which are necessary to prevent intestacy, the court has no power to insert them and thus make a will for the testator : Byers *v.* Byers, 6 Dana (Ky.) 313 ; Murgitroyd's Est., 1 Brewst. 319 ; McKeehan *v.* Wilson, 3 P. F. S. 76. Nor in construing a will may circumstances of parties, or the

amount of the estate, or the consequences of a particular construction be taken into account: Currie *v.* Murphy, 35 Miss. 473. Words can only be supplied by the court when actually necessary, and if a doubt arises as to whether the change would bring out the testator's intention, it cannot be made: 1 Redfield 470; Annable *v.* Patch, 3 Pick. 360.

*Samuel F. Flood,* for the appellees.—The testator's primary object was to provide for his unmarried daughters, as is clear from his bequeathing to them his entire estate, in the event of the insurance policy not being paid. If the appellant's construction of the will is allowed the testator practically died intestate as to a large part of his estate, and made no provision for his unmarried daughters. The will should be construed so as to prevent intestacy; even if it becomes necessary to change the order of his words. This may be done when necessary, to make the testator's intention clear : Baker *v.* Pender, 5 Jones Law 351 (N. C.); 4 Paige Ch. 351 ; Linstead *v.* Green, 2 Md. 82; Brownsword *v.* Edwards, 2 Ves. Sr. *243; Luxford *v.* Cheeke, 3 Levinz, 125 ; Walker *v.* Walker, 17 Ala. 396 ; East *v.* Cook, 2 Ves. Sr. 30. The clauses of the will are not separate and independent but are intimately connected. The court is not asked to insert words into the will to change its meaning but to consider its clauses in their true connection, so as to give full force to all its words.

Mr. Justice GORDON delivered the opinion of the court, February 26th 1883.

The cardinal canon for the construction of wills is that which requires us to ascertain, and give effect to, the intent of the testator, or as it is stated by our brother, Mr. Justice MERCUR, in the case of Middleswarth's Adm'r *v.* Blackmore, 24 P. F. S. 415, regard must be had to the whole scheme of the will, and if it is found that a particular intent is inconsistent with the general intent, the former must give way to the latter. Another rule is that cited in the brief and able opinion of the court below, from the case of East *v.* Cook, 2 Ves. Sr. 30 ; that is to say, we are not to consider exactly the order in which the words are placed, if a different arrangement will better answer the apparent intent of the testator. A third rule is, that no presumption of an intent, on part of the testator, to die intestate of any part of his property, is to be made, when his words, as found in the will, can fairly be construed to dispose of the whole of it.

The mere statement of these rules is, in itself, sufficient to dispose of the case before us. That Dr. Scoffin did intend to dispose of his whole estate, is a matter that, from the whole

[Ferry's Appeal.]

tenor of his will, is not doubtful. That there was such a dis-
position of it for and during the life of his wife is, we believe,
not disputed, and the only shadow of a reason urged against
the absolute and final character of that disposition is supposed
to be found in that part of the will in which the testator
attempts to define the conditions under which his married
daughters shall have their bequests of $1,000 each.

We fully agree with the court below, that the will, from
the beginning to the end, most clearly shows that the main
design of the testator was to provide for his wife and unmarried
daughters, including such as might happen to be widowed. If,
however, we adopt the theory of the appellant, and wipe out
the residuary clause, we give the preference, by $1,000 each
out of this small estate, to those daughters who may chance to
have husbands at the time of their mother's death. And why?
That, says the appellant, the sum thus .given may stand as an
offset or equivalent for the maintenance of the unmarried
daughters in their father's house! In other words, the scant
subsistence which this small estate can afford to these helpless
girls, during their mother's life, is to be charged up to them,
and finally to be deducted from the share that may fall to them.
But how, suppose one of them happens to marry the day before
the mother's death? She is, nevertheless, to have her $1,000,
though she has had her maintenance with the others. Here
is a fact which at once breaks down the appellant's hypothesis,
and still leaves the assumed preference for the married daughters
unaccounted for. Perhaps it was intended as a kind of premium
upon marriage? But in the way of this supposition stands the
fact, that though a daughter had been married, if she was un-
fortunate enough to lose her husband before the time fixed for
the distribution of the estate, she was entitled to no preference,
but took only as one of the unmarried children ; and yet we can
hardly suppose that the testator had it in mind thus to reflect
upon an unfortunate daughter for the loss of her husband. The
consideration of these things show us most conclusively what
the testator did not mean, and so strengthens the position
assumed by the court below. If, however, in pursuance of the
rules above stated, we allow the residuary clause to stand, and
disentangle it from the awkward and unskillful language by
which it is surrounded, everything in the will becomes clear
and unambiguous. The married daughters are to have each
$1,000, because they are to enjoy no other part of the decedent's
property, and to the unmarried daughters, whether widows or
spinsters, there is no specific bequest, because to them goes the
residue of the estate. We therefore approve of the decree of
the Orphans' Court, because, as it seems to us, it enforces that

construction of the paper in controversy which most clearly reveals the will of the testator.

The appeal is dismissed at the costs of the appellant, and the decree is affirmed.