## L. E. JONES v. THEO. STRONG ET AL.

.APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 14, 1891—Decided May 25, 1891.
[To be reported.]

,1. The inconsistency which will justify a disregard of the former of two testamentary provisions relating to the same subject, must be clear and irreconcilable; and, if one of them is capable of a construction which will harmonize each with the other and with the general plan of the testator for disposing of his estate, it is the duty of the court to adopt that construction.

,(a) A testator, owning unproductive coal lands, authorized his executors to convert the same into money by sale, or to lease them. His residuary estate he divided into two equal parts, giving one of them to his daughter absolutely, and directing the other to be invested for her use ,during life, and, at her death without issue, to be paid to collateral relatives of the testator;

,(b) A subsequent paragraph expressed a wish that the executors, in their discretion, should lease the coal lands "so as to bring in a permanent revenue, in preference to selling the same, . . . . the income thereof to go to my daughter, in lieu of converting the same into cash and reinvesting for her benefit." The testator, prior to his decease, leased the coal lands upon a royalty:

.2. Construing the provisions relative to the income of the coal lease in connection with the prior parts of the will, the royalties upon the lease were to be divided in the same manner as would the purchase money of the coal lands in case of a sale thereof, the daughter receiving one half of such royalties absolutely, and the other half being invested during her life.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 3 July Term 1890, Sup. Ct.; court below, No. 354 December Term 1887, C. P.

To the number and term stated of the court below, there was entered by agreement an amicable action of assumpsit between Louisa E. Jones, plaintiff, and Theodore Strong and ,others, executors of the will of R. J. Wisner, deceased, defend-.ants, a case stated being filed which set out the facts in sub--stance as follows:

Case stated.

On August 17, 1877, R. J. Wisner, being seised of certain coal lands in Luzerne county made his last will and testament, whereby, after directing the payment of his funeral expenses and just debts, he ordained and provided as follows:

"2. I give and bequeath to my beloved wife Margaret Wisner the sum of ten thousand dollars and all the furniture in her house belonging to me. This is to be in lieu of her right of dower in my estate.

"3. The balance and residue of my estate the one half I give to my daughter Louisa E. Wisner, to do with as she may think best. The other half to be invested for her use during her life; should she marry and have offspring, then to be equally divided among her children. If she should die without children, then I desire that it lapse to my estate and be distributed as follows:

"4. The one fifth to the children of my deceased brother, Gabriel Wisner. One fifth to my brother, James Wisner. One fifth to my brother, Richard Wisner, residing in Warwick, Orange county, N. Y. One fifth to my brother, J. A. Wisner, residing in Brooklyn, N. Y. One fifth to my sister Mary E. Vandeveer, residing in Davenport, Ia. I do hereby appoint as my executors Theodore Strong, Charles H. Foster, of West Pittston borough, and my brother, J. A. Wisner, of Brooklyn, N. Y., and I hereby give them full power to sell and convert my estate into money; or to lease my coal interest and to carry on the foundry business with the said T. Strong, so long as in their judgment they may deem it advisable for the interest of my estate, and to do all things as fully as I could do if living.

"5. It is my wish that my executors should lease my coal lands at such price as they think best, so as to bring in a permanent revenue in preference to selling the same, if in their judgment it should be deemed best, the income thereof to go to my daughter in lieu of converting the same into cash and re-investing for her benefit. And that the first and second bequest be paid in the order named."

At the date of this will, Louisa E. Wisner was unmarried, and so continued until after the death of said R. J. Wisner, since which time she has intermarried with Thomas E. Jones, her present husband, by whom she has issue, to wit, Eveline Louise Jones, a female child now living.

Case stated.

Prior to his decease, by an instrument dated November 10, 1881, the testator " demised, leased and to mine let," unto A. McI. DeWitt and Joseph L. Cake, their heirs and assigns, the coal lands referred to in his will, the lessees to mine all the merchantable coal of a specified average quality, contained in said land, and to pay to the lessor a royalty therefor by the ton.

On January 17, 1884, the said R. J. Wisner died. His said last will and testament was duly admitted to probate on January 30, 1884, and the same day letters testamentary were granted to the said Theodore Strong, Charles H. Foster and J. A. Wisner, who entered upon the execution of said trust.

The said executors, since the decease of said R. J. Wisner, have received coal royalties under said lease over and above the payments of all debts of the testator and the legacy to the widow, to the amount of six thousand dollars, one half of which has been paid over to the said Louisa E. Jones, and the other half of which has been invested by the said executors.

The said Louisa E. Jones, the plaintiff, claims to be entitled to the whole of the royalties arising from the coal lease, and the said executors claim, under the said will, the right to invest the undivided one half of the same, and pay over the interest on the same to the said plaintiff, during her life, and at her decease, if she shall leave a child or children surviving her, to such surviving child or children, and in default of such child or children, then to pay the said one half of said royalties over to the brothers and sisters of said testator named in said will.

If the court should be of opinion that the said plaintiff is entitled, under said will, to the whole of said royalties, then judgment to be entered for the plaintiff for the sum of three thousand dollars. If the court should be of opinion that the plaintiff is entitled to the one half of said royalties absolutely, and the interest upon the other half invested by said executors, then judgment to be entered for the defendants. The costs to follow the judgment. Either party to be entitled to a writ of error.

—After argument, the court, WOODWARD, J., entered judgment on the case stated for the defendants, whereupon the plaintiff took this appeal assigning the entry of said judgment for error.

Arguments.

*Mr. W. H. Jessup* (with him *Mr. Jessup* and *Mr. Hand*), for the appellant:

1. It is clear that when the will was made the testator intended that his executors should lease his coal lands and pay over the whole royalties to his only child, the plaintiff: Eley's App., 103 Pa. 300; McClintock v. Dana, 106 Pa. 386; Shoemaker's App., 106 Pa. 392; Wentz's App., 126 Pa. 541. There is a residuary clause, so as to preclude the idea of intestacy as to any part of his estate, but it is evident that he did not intend his coal lands, if leased, to form such residue. The clause in regard to leasing his coal lands is his last thought. Its position is evidence that the prior residuary clause was not meant to apply to the royalties. Does the fact that the testator to some extent became his own executor by making the lease himself, change all this? The same reason for the devise prevails.

2. The act of June 4, 1879, P. L. 88, does not apply to this case, as this will was executed before its passage: Taylor v. Mitchell, 57 Pa. 209. But, even if the act did apply, is it not clear from the will that the testator intended his daughter to have the whole income from his coal lands when leased? At the date of the will the case of Sanderson v. Scranton, 105 Pa. 469, had not been decided. Coal leases were looked upon popularly as any other leases, and royalties were considered only as rent. This was without doubt the testator's view when he made his will. By income he meant coal rents. He made no subsequent change in the will, but he carried out this part of it himself by providing the very "income" which he directs shall go to his daughter. The construction of a will should be gathered from the whole instrument: Middleswarth v. Blackmore, 74 Pa. 415; Ferry's App., 102 Pa. 207; Baker's App., 115 Pa. 590; Miller's App., 113 Pa. 459; in the light of surrounding circumstances: Stambaugh's Est., 135 Pa. 585; Woelpper's App., 126 Pa. 562.

*Mr. George S. Ferris,* for the appellees:

1. The will, unless it fairly indicates a contrary intention, speaks from the death of the testator. This was the old common-law rule as to personalty: 1 Jarman on Wills, 600, note 3; Donaugher's Est., 2 Pars. 164; Clarke's Est., 82 Pa.

528; and immediately after the decision in Girard v. Philadelphia, 4 R. 323, it was extended to after-acquired real estate by § 10, act of April 8, 1833, P. L. 250. Its re-enactment by act of June 4, 1879, P. L. 88, was practically declaratory of the existing law, and the question whether the latter act applies to this will is therefore unimportant. There being nothing to the contrary in the will, the presumption must be that where "coal lands" are spoken of, those words relate to such as the testator should own at his death, and no others; and that where the word "estate" is used, it embraces everything that would be a part of his estate at that time, including unpaid purchase money of land sold.

2. The general intent of the testator is clear. He meant his residuary estate to be treated as consisting of two moieties, one of which should go to his daughter absolutely, while the other should be invested by the trustees. "Estate" here includes personalty, and therefore embraces these coal royalties, which in law are purchase moneys owing to the testator: Hope's App., 2 Cent. R. 43; Fairchild v. Fairchild, 7 Cent. R. 873. This plain disposition cannot be modified by precatory words such as are used in the fifth clause of the will: Hopkins v. Glunt, 111 Pa. 287; Bowlby v. Thunder, 105 Pa. 173; McIntyre v. McIntyre, 123 Pa. 329. But the fifth clause relates only to such coal lands as would be under the control of the executors, and has no application to the subject of the case stated. It can be, and therefore should be construed to harmonize with the third clause: Varner's App., 87 Pa. 422; Wager v. Wager, 1 S. & R. 373; Tyler v. Moore, 42 Pa. 374; Sheetz's App., 82 Pa. 213; Musselman's Est., 5 W. 9; Doebler's App., 64 Pa. 9; Ferry's App., 102 Pa. 207; Schott's Est., 78 Pa. 40; Earp's Will, 1 Pars. 457. The cases cited by appellant are inapplicable, the facts being different: Fox's App., 99 Pa. 382.

OPINION, MR. JUSTICE WILLIAMS:

The will of R. J. Wisner was executed in 1877. His death did not occur until 1884. When he made his will, the larger part of his estate appears to have consisted of unproductive coal lands, and he gave his executors full power to sell or lease them, as they might think best. Having thus provided for converting his estate into money, he disposes of the fund as fol-

lows : By the second paragraph, he gave ten thousand dollars to his wife in lieu of dower. By the third, he directed that the residue, after the payment to his wife, should be divided into two equal parts. One of these he gave to his daughter, the appellant, " to do with as she may think best ; " the other he gave to his executors, in trust to re-invest the same for the use of his daughter while she lived, and for distribution at her death among her children if she should leave any, and among certain collaterals named if his daughter should leave no child surviving her. The fourth paragraph described the collaterals, and the manner in which they should take, if the one half in the hands of trustees should reach them. The fifth is partly advisory and partly directory. The will provided for a division upon the idea that the executors might decide to sell his coal lands, and so have their proceeds in hand for use in accordance with his directions; but in this paragraph the testator expressed his preference for a sale upon royalty, called a lease, and his wish that his executors should, if it seemed best to them, treat his coal lands in this way, so as to secure what he styles " a permanent revenue " from them, rather than from a re-investment of the proceeds of a sale of them. But this seems to have suggested to him that the directions he had given about division and re-investment would be inapplicable in case of a sale upon a royalty, and that division would in that case be necessarily made of the income or annual payment of royalties as they were received. He proceeds, therefore, to say " the income thereof (the royalties reserved in the lease) to go to my daughter in lieu of converting the same (the land out of which the royalties are reserved) into cash and re-investing for her benefit."

The question in this case is over the effect of the words just quoted from the fifth paragraph. It is contended by the appellant that they operate as a revocation of so much of the third paragraph as provides for a trust as to one half of the estate for the benefit of her children, and, in case she shall leave none, for the collaterals named in the fourth paragraph, and gives to her the entire proceeds of the royalties. To determine whether this is so or not we must look at the will as a whole.

The general intent or scheme of the will is plain. It is to

provide first for his wife, next for his daughter, then for her issue, if any, but if none, then for certain persons named. The wife takes her share absolutely as the first step in the division. The balance is divided into equal parts, and the daughter takes one of these absolutely. The other goes to trustees for the benefit of alternative classes of beneficiaries after the daughter's death. In case a sale had taken place by which the coal land had been converted into money, no question could have arisen over the relative interests of the daughter and the trustees. But the paragraph under consideration suggests another mode of raising an income from the coal lands, and expresses the testator's preference for it, if, when the time comes for settling the question, his executors should think it advisable. It does not indicate any purpose to change the general plan for disposing of his estate, or to strike down the trust; and if this paragraph is capable of a construction that will not interfere with either, it is clearly our duty to adopt it : Ferry's App., 102 Pa. 207; Sheetz's App., 82 Pa. 213. The inconsistency to justify a disregard of the former of two provisions relating to the same subject must be clear and irreconcilable : Sheetz's App., supra.

Looking at these provisions in their relation to each other and to the scheme of the will, we are of opinion that the court below correctly held them to be consistent with each other. The testator provided for the division and distribution of his estate in the third paragraph of his will, on the idea that it would be converted into money by his executors, and the shares of the widow, the daughter, and the trustees be taken by each in bulk. But, desiring, and anticipating as possible, a sale of the coal at a royalty, so that, after the payment of his bequest to his wife, his executors would have under their control the periodical royalties from the coal, instead of the price of the coal land as a whole, he intended to put the royalties in place of the gross price of the land, so that his estate would in either event follow the plan of division he had provided. This portion of the fifth paragraph may therefore be read as follows : In case of a sale of the coal upon a royalty I wish " the income thereof (the royalties) to go to my daughter (to the extent to which she is entitled to take) in lieu of converting the same (the land) into cash and reinvesting for her benefit," (as here-

inbefore provided in case of a sale of the land.) This construction preserves the scheme of the will, and makes it applicable to either of the modes of dealing with his coal lands which were before the mind of the testator. That contended for by the appellant sacrifices the general intent, the trust, and the remainder-men; and this result is reached, not because the testator has declared his purpose to revoke the trust, but because the executors have royalties to distribute from time to time, instead of a gross sum to divide at once. There is no reason to suppose that the testator intended to change his plan of distribution, unless it can be gathered from the words in the fifth paragraph which we are considering, and these do not refer to the trust at all. They direct, as we think, that the price of the coal shall be divided in the same manner, and that his daughter shall stand in the same position towards it, whether that price shall come to the hands of his executors in a gross sum, or in a series of instalments as royalties.

　　　　　　　The decree of the court below is affirmed, at the cost of the appellant.