## Klapp's Estate.

*Will—Construction—Presumption as to testacy.*

No presumption of an intent on the part of a testator to die intestate as to any part of his property is to be made when his words, as found in his will, can fairly be construed to dispose of the whole of it. The presumption if any is to be made the other way.

*Wills—Construction—Order of words.*

In construing wills it is not always necessary for the court to consider the words exactly in the order in which they are placed, if a different arrangement will better answer the apparent intent of the testator.

*Wills—Construction—Meaning of words—Presumption.*

Words occurring more than once in a will, will be presumed to be used always in the same sense, unless a contrary intention appears by the context, or unless the words be applied to a different subject.

*Will—Construction—Intestacy—Meaning and order of words.*

Testator directed as follows : " The rest and residue of my property, I give and devise unto my children during their natural lives ; but if my son should be the survivor, then he shall pay the one half of the rents thereof (after deducting the expenses of keeping them in repair and other charges) to the children of my daughter, if she was married and left any children ; and after his death, I give and bequeath the same unto the children above mentioned of my son and the children of my daughter, if married and left any, each to take an undivided moiety of my property ; but if my daughter should die unmarried, then I give, devise and bequeath my properties to my son and his children, each to take an undivided moiety." The daughter died after her father and brother, married, but without children. *Held*, that the portion of the estate given to the daughter for life went upon the death of the daughter to the children of the brother.

Argued Nov. 14, 1901. Appeal, No. 234, Oct. T., 1901, by Charles C. Goodman, from decree of O. C. Berks Co., Jan. T., 1894, No. 46, sustaining exceptions to adjudication in the Estate of Daniel Klapp, Deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to adjudication.

The material portions of testator's will were as follows :

" I give and bequeath unto my son Joseph the sum of twenty thousand dollars, in trust, to invest it, if possible, on mortgage, and to pay the interest to my daughter Catharine during her

natural life, and after her death, I give and bequeath the principal and interest thereon, to her children, if she was married and had any, share and share alike. But if she should die unmarried, then I give and bequeath the one half thereof to my son Joseph and the other half to his four children, Emma, Daniel, Catharine and Abraham; and if any of them should happen to die under age, then I give and bequeath the share or shares of him, her or them so dying, unto the survivor or survivors of them.

" The rest and residue of my property, I give and devise unto my children during their natural lives; but if my son should be the survivor, then he shall pay the one half of the rents thereof (after deducting the expenses of keeping them in repair and other charges) to the children of my daughter, if she was married and left any children; and after his death, I give and bequeath the same unto the children above mentioned of my son and the children of my daughter, if married and left any, each to take an undivided moiety of my property; but if my daughter should die unmarried, then I give, devise and bequeath my properties to my son and his children, each to take an undivided moiety."

Joseph G. Klapp and Catharine M. Klapp, the devisees named in the will of the testator, were his only children and heirs at law; and they both survived him.

At the execution of the will and the death of the testator, Catharine was unmarried.

On March 27, 1893, Joseph G. Klapp, the son, died. He had been twice married, and left to survive him as his widow, Elizabeth Klapp, and the following children: (a) the children of his first marriage, those mentioned in the will of the testator, viz: Emma L. Kline, Daniel Y. Klapp, Catharine Miller and Abraham I. Klapp; and (b) the children of his second marriage, viz: Mary A. Klapp, Annie E. Klapp, and Florence E. Klapp.

On December 14, 1893, Catherine M. Klapp was married to Charles C. Goodman, and she died testate and childless, and without ever having had a child, on December 4, 1899, leaving her said husband to survive her, and having by her last will and testament devised and bequeathed to him her whole estate, subject to a bequest for life of the income of $2,500 to one Eva

Hoehl, and of the principal of the legacy to her absolutely, in the event of her surviving the said Charles C. Goodman.

The court in an opinion by BLAND, P. J., sustaining exceptions to the adjudication, awarded the fund representing the life estate of the daughters to the children of the brother.

*Error assigned* was in dismissing exceptions to adjudication.

*Henry Maltzberger*, for appellant.—The transposition of words and sentences, it seems, should be limited to cases where a clause or expression is otherwise senseless or contradictory: Nebinger's Est., 185 Pa. 405.

The court cannot provide for an event which appears to have been absent from the testator's mind, however strange the omission may be: 2 Jarman on Wills, ch. 17, sec. 1, p. 64; Filbert's Est., 195 Pa. 295; Knepley's App., 17 Pa. 19; Carman's App., 2 Penny. 332; Toldervy v. Colt, 1 Mees. & Wel. 250; Parsons v. Parsons, 5 Ves. 578; Carpenter v. Heard, 14 Pick. 449; Wood v. Mason, 17 R. I. 99; 20 Atl. Repr. 264.

Catharine's one-fourth interest in this real estate was vested in her as heir from the time of Daniel Klapp's death, subject only to be defeated by the vesting of the contingent remainders to her children. Though her death was to precede the ultimate limitation, it matters not: Bell's Est., 147 Pa. 389; Buzby's App., 61 Pa. 111; DeSilver's Est., 142 Pa. 74; Penrose's Est., 4 Pa. Dist. Rep. 773; Holmes's App., 53 Pa. 339.

Catharine could devise her interest in the real estate: Buzby's App., supra.

The words " if my daughter should die unmarried " form a condition or contingency, necessary to be fulfilled in order that the legacies or devises dependent upon it may take effect: Davison's App., 16 Atl. Repr. 598; Dalrymple v. Hall, L. R. 16 Ch. Div. 715; Baldwin v. Rawding, 2 B. & Ald. 441; Everett v. Cooke, 7 East. 269; Williams v. Chitty, 3 Ves. 545; Seccombe v. Edwards, 28 Beav. 440; Stevenson v. Schriver, 9 Gill. & J. 324; Griffith v. Woodward, 1 Yeates, 316.

*Cyrus G. Derr*, with him *Isaac Hiester* and *Horace A. Yundt*, for appellee, cited: Goodman's App., 199 Pa. 1; Eden v. Wilson, 4 H. of L. Cases, 257; Abbott v. Middleton, 7 H. of L.

Cases, 68; Shallcross's Est., 9 Pa. Dist. Rep. 690; Ferry's App., 102 Pa. 207; Stevens's Est., 164 Pa. 209.

OPINION BY RICE, P. J., January 21, 1902:

It is quite true, as the appellant's counsel says, that a testator is not obliged to provide for every contingency, and it is not within the province of a court to do this for him even to avoid partial intestacy, whether such omission was made designedly or through lack of forethought. But it is equally permissible to say that no presumption of an intent on the part of a testator to die intestate as to any part of his property is to be made, when his words, as found in his will, can fairly be construed to dispose of the whole of it. The presumption, if any is to be made, is the other way. But aside from the rule or canon of construction which favors testacy, we are unable to escape the conclusion from a careful perusal of this will, having due regard to its whole scheme, that the testator intended to dispose of all his property and to provide for every contingency that might happen. Whether he succeeded in providing for the contingency which has happened, namely the death of his daughter without children after the death of his son, is another question, but in determining it we are justified, both upon principle and authority in keeping this general intent in view. The clause, " but if my daughter should die unmarried, then I give, devise and bequeath my properties to my son and his said children each to take an undivided moiety "—construed as a similar clause in the second item of the same will was construed in Goodman's Appeal, 199 Pa. 1,—would cover the case, unless, as is contended by the appellant's counsel, it is applicable only to the contingency of her death before her brother. The position of the clause in the will lends plausibility to this contention, but aside from that consideration all the arguments are in favor of the conclusion that the testator intended the devise over to take effect in the event that Catharine died unmarried or married without children, whether her death occurred before or after the death of Joseph. The latter construction avoids the conclusion that the testator died intestate as to any part of his property, and it is in harmony with the whole scheme of the will as clearly manifested in other provisions, which was that in the event of his daughter's death

without leaving children, her share of the estate should go over to his own blood. In construing wills it is not always necessary for the court to consider the words exactly in the order in which they are placed, if a different arrangement will better answer the apparent intent of the testator: Ferry's Appeal, 102 Pa. 207 ; Stevens's Estate, 164 Pa. 209. "It seems, therefore, that, although the words as they stand are not absolutely senseless or contradictory, transposition will be made if it be required to effectuate an intention clearly expressed or indicated by the context. Eden v. Wilson is an instructive example of the doctrine:" 1 Jarman on Wills (5th Am. ed.), * 502. But this is not a case where transposition of words is necessary ; it is rather a case where we are justified in holding that the clause in question is not to be construed as applying exclusively to what preceded it in the draft of the will. The words are general and although not the best that might have been chosen, are sufficient to provide for the ultimate disposition of the property in the contingency that has happened. Having made such general provision in a preceding part of his will, the testator evidently deemed it unnecessary to repeat it in the second item of the residuary clause. It would have added to clearness had he done so, but notwithstanding the earnest and able argument of the appellant's counsel, we are not convinced that the position of the words is of such significance as to warrant us in holding that the devise over was intended to be of no effect if Catharine survived Joseph.

It is argued that even if the devise over is to be construed as taking effect whether Catharine died before or after Joseph, still it did not take effect, because she did not die unmarried. The gift was to his daughter for life with remainder to her children "if she was married and left any," but if she "should die unmarried," then over. The general rule is that words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appear by the context or unless the words be applied to a different subject ; 2 Jarman on Wills (5th Am. ed.), * 842. We find nothing in the context to show that the words of the will last quoted were used in a different sense in the residuary clause from that in which they were used in the second item of the will. Nor does the subject of the gift require a different con-

struction.  In a case involving the construction of the latter item, the Supreme Court said: " The clear intention of the testator was that the bequest to his daughter Catharine for life with remainder to her children should go to his son Joseph and his children in the event that Catharine died unmarried, or married without children:" Goodman's Appeal, 199 Pa. 1. We regard this as a controlling authority upon the precise question last stated.

Decree affirmed and appeal dismissed at the costs of the appellant.