## Baldwin Estate.

Argued April 20, 1954.    Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William Jay Leon*, with him *R. Winfield Baile*, for appellant.

*Edward H. Bryant, Jr.*, with him *William James Taylor* and *Lutz, Fronefield, Warner & Bryant*, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 24, 1954:

This controversy turns on the question as to what property the testatrix, Ida C. Baldwin, understood as being included in "the undivided one-seventh interest in the estate of my late father, A. J. Gottshall of Darby, Pennsylvania, which has been bequeathed and devised to me and to which I am entitled, . . .".

Adam J. Gotshall died in 1934, leaving one-third of his estate to his widow and the remaining two-thirds to seven of his eight children of whom the testatrix was one.* His estate consisted of stocks, bonds, notes, mortgages, cash in bank, and bills receivable, aggregating approximately $146,000, and 114 parcels of real estate, improved and unimproved, appraised at an aggregate value of approximately $164,-000. Shortly after his death the widow deeded all her interest in the estate to the seven children named in the will. Thereafter these children handled the property, both real and personal, as a family affair. Two of the sons, who were executors of the estate, acted, each at a different time, as agents for all of them to collect the rents and income, pay expenses, and disburse principal and income as the estate was gradually liquidated. Some of the parcels of real estate were sold and the proceeds distributed; other parcels were retained as rental investments. The children held annual meetings at which the agents made reports to them regarding all the transactions of the estate. This family arrangement continued down to and after the death of the testatrix.

Ida C. Baldwin's will was dated June 29, 1937, and in it, after making a few small bequests, she provided as follows: "SIXTH: All the rest residue and remainder of my estate both real and personal of what-

---

* He had four sons and four daughters; he disinherited one of his sons.

soever kind, character or description and wheresoever situate, *excepting therefrom the undivided one-seventh interest in the estate of my late father, A. J. Gottshall of Darby, Pennsylvania, which has been bequeathed and devised to me and to which I am entitled,* I give, devise and bequeath to my beloved husband, Cyrus W. Baldwin absolutely, to him, his heirs, executors, administrators and assigns forever. SEVENTH: From the said one-seventh interest in the estate of my father, A. J. Gottshall, which belongs to me and which represents my share in said estate, I order and direct that all principal and income payments which become due and payable during the lifetime of my husband Cyrus W. Baldwin, shall be paid to him, my said husband, for and during the term of his natural life, . . . Upon the death of my said husband, Cyrus W. Baldwin, I order and direct my executors to pay the balance of principal and income due me from the estate of my said father, A. J. Gottshall, in equal shares as they become due, share and share alike to my sisters, Jennie Todd, Florence O'Rourke and Mabel W. Hutton. Should one or more of my said sisters have died before my husband, Cyrus W. Baldwin, then I order and direct that the said balance belonging to me from the estate of my said father shall be paid to my surviving sister or sisters share and share alike. In the event that all three of my sisters shall die before my husband, Cyrus W. Baldwin, I direct that the balance then remaining shall be paid to the Hackensack Hospital Association of Hackensack, Bergen County, New Jersey."

Cyrus W. Baldwin, the husband of the testatrix, died in 1944; shortly thereafter she herself was adjudged mentally incompetent; she died, childless, in 1950. The three sisters named in her will are all living. Her estate consisted of personalty of a value of

approximately $54,000 and real estate worth approximately $50,000 of which about $30,000 was in properties inherited from her father and owned jointly with six brothers and sisters. At the time of her death the personalty in her father's estate had been almost entirely liquidated, but of the realty there were still some 70 parcels unsold.

We come now to the question here involved. When the testator reserved from her devise and bequest to her husband in the SIXTH paragraph of her will her undivided one-seventh interest in the estate of her father as hereinbefore set forth, did that reservation include her interest not only in the personalty but also in the realty in that estate? The sisters of the testatrix contend that the reservation included the realty, and therefore, when, in the SEVENTH paragraph of her will, she gave to them on the death of her husband what she had reserved from him in the SIXTH paragraph, she was giving them *all* the property to which she was entitled from her father's estate, personalty and realty alike. On the other hand, the brothers of the testatrix take the position that the reservation was meant to include her interest only in the personalty; therefore the realty passed to her husband under the gift to him in the SIXTH paragraph, and, since he died in the lifetime of the testatrix, the gift lapsed, with the result that, as to such realty, the testatrix died intestate and accordingly all her brothers and sisters become entitled to share therein as her heirs. The court below rejected this contention and decided that the sisters were entitled to all the property, personalty and realty, which the testatrix inherited from her father. From the decree of the court so holding one of the brothers now appeals.

We can find no justification whatever for the proposition that the reservation in the SIXTH paragraph

of the will of the testatrix was not intended by her to include realty as well as personalty. In the first place, the reservation was of "the undivided one-seventh interest in the estate of my late father, . . . which has been bequeathed *and devised* to me and to which I am entitled." The will was obviously prepared by a professional draftsman and every lawyer knows that the word "devised" refers to a testamentary gift of real estate as distinguished from a bequest of personalty. In construing a will technical words must ordinarily be given their legal effect since it must be presumed that they were intentionally and intelligently employed: *Keating v. McAdoo,* 180 Pa. 5, 11, 36 A. 218, 219; *Berger Estate,* 360 Pa. 366, 371, 61 A. 2d 855, 857.

In the second place, all the circumstances existing before and at the time testatrix wrote her will point inevitably to the conclusion that as far as her inheritance from her father was concerned her intention was to give to her husband only the portions thereof which might come into his possession by the process of liquidation during his lifetime, and to give the balance which remained unliquidated at the time of his death to her sisters, or in case of their prior death to the named charity. During all the years following the death of her father his estate had remained, in whole or in part, in an undivided mass, and from time to time she received payments on account of her interest therein, not only of income but of principal or corpus derived from collections of obligations due the estate and from the proceeds of the sales of parcels of real estate. When she directed in the SEVENTH paragraph of her will that "all principal and income payments which become due and payable during the lifetime of my husband . . . shall be paid to him, . . ." what she obviously had in mind was that just as *she* had been receiving payments of principal and interest on

account of the share in her father's estate such pay-ments after her death should continue to be made to her husband during the period of his lifetime, and "the balance of principal and income due me from the estate of my said father," that is to say, the income and principal or portion of the corpus still remaining unliquidated and undistributed at the time of her husband's death, should then go to her sisters.

It is clear that, from whatever angle considered, it would be a wholly arbitrary limitation of the generality of the phrase: "the undivided one-seventh interest in the estate of my late father . . . which has been bequeathed and devised to me and to which I am entitled" to insert words therein so as to make it read "the undivided one-seventh interest *in the personalty* in the estate of my late father . . . which has been bequeathed and devised to me and to which I am entitled."

Decree affirmed at appellant's costs.