Henderson Estate

R. *Jere Bloche, Reuben Miller* and *Newman & Master,* for exceptants.

*Donald E. Hogeland,* contra.

BOLGER, J., May 12, 1961.—These exceptions involve the interpretation of the will of Adelaide C. Henderson for the purpose of determining which of her grandchildren are entitled, upon the death of the last surviving of her four children, to take the one-fourth share of the trust under the residuary clause of the will, of a child who died childless.

Testatrix died May 22, 1910. Her will was dated November 8, 1908. She was survived by four children: George W., William H., Louisa B. H. Shumway and Gertrude W. H. Horner. All of said children are now deceased and, with the exception of William H., were survived by and are now represented by children.

William H. died June 9, 1949, without issue, but survived by his sister, Gertrude.

Following his death, the writer, as auditing judge, awarded the income from his trust to Gertrude and withheld distribution of principal stating: "The question of principal distribution did not arise until the death of the surviving life tenant."

The present accounting has been filed because of the death of Gertrude, the last surviving child of testatrix. Judge Shoyer, as auditing judge, awarded the share of William's trust per stirpes to the grandchildren, including the children of George. The children of Louisa and Gertrude, exceptants, claim they are entitled to take William's share to the exclusion of George's children.

George had lived to receive his one fourth share outright. Louisa's children received their mother's share at her death, and Gertrude's children will now receive their mother's share of principal. Are they, and they only, entitled to share William's one fourth stirpitally and exclude George's children? Did testatrix intend this inequality among grandchildren and thus disinherit George's children respecting the fund now before the court?

Judge Shoyer applied the doctrine of equality among the grandchildren as a class based upon his interpretation of the entire will, relying principally upon the authority of Hunter's Pennsylvania Orphans' Court Commonplace Book, 2d, vol. IV, §11(i), page 111, that "A general gift to a class may include a person who has been restricted to a particular gift, or one who has been expressly excluded from benefit under the will, where the gift to the class contains no such restriction or exclusion": Webb's Estate, 62 Pa. Superior Ct. 547.

In paragraph thirteenth, residuary clause, the first one fourth share of residue is bequeathed outright to son, George. The remaining three fourths are then given in spendthrift trusts to each of testatrix' three other named children respectively for the balance of their lives; two of these children were then married daughters. Under the trust, upon the deaths of any one of these three children, their issue succeed to the income of the share of the parent until age 21, when they become entitled to principal per stirpes.

This subparagraph is lengthy and in the course of it, testatrix refers several times to "any of my children" and "all persons entitled in remainder." Subparagraph 6 contains the provision in dispute. The pertinent part of it reads as follows:

". . . but should any of my said three children die leaving no children or other issue, living at the time of such child's death, I direct that the portion of the principal share of any such deceased child of mine shall continue to constitute a part of my residuary estate for the benefit of the remaining cestui que trustent in the trusts in this will mentioned and in the proportions hereinabove designated, subject, nevertheless, to the trusts, conditions and limitations hereinabove declared."

Subparagraph 7 next proceeds to dispose of the share of any "of my children" who predecease testa-

trix in trust for the issue of such child or children or issue until 21 and thereupon the principal to such persons per stirpes. The concluding sentence reads as follows:

"The division among the issue of the deceased child shall be per stirpes, and such issue to take the share only which their parent would have taken had she or he reached the age of twenty-one years."

Paragraph fourteenth provides an in terrorum clause which states should "any person entitled to any interest under this my will" endeavor to "defeat my intentions as herein expressed . . ." he shall forfeit his share and any shares thereupon are bequeathed "to my remaining children share and share alike subject to all the conditions and limitations herein provided therefor."

Thus in the testamentary scheme, after the minor bequests referred to, no child but George was to receive anything but income except under paragraph fourteenth, while no grandchild or later issue was to receive anything but principal except during minority. Since George's outright gift became effective, his children will receive nothing unless it be in the present situation. The picture now presented is that George has received his individual share outright, while the children of the two daughters have already received their respective parent's share and now claim all of the one fourth share to the complete exclusion of George's children. The result will be that George's two daughters are not only being treated unequally, but will be completely disinherited. Did testatrix so intend?

The first question is: Does the testamentary intent clearly appear in the language of the will? In Britt Estate, 369 Pa. 450 (1952), appear several pertinent rules of construction to determine whether the intent be clear or ambiguous. The first of these is that testatrix' intent is the pole star; that it must be ascertained

from a consideration of the entire will which must be read in the light of the circumstances surrounding testatrix when she made it, including the condition of her family, the natural objects of her bounty and the amount and character of her property; that if no ambiguity exists, her meaning must be ascertained from the language of her will. "Where a testator's intent is clear from the language of his entire will, technical rules or canons of construction are unnecessary; it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to": (Page 455). The familiar doctrine that the court must put itself in the armchair of testator adverted to in the cited case is hornbook law. The time element is salutary here because exceptants argue that since the trust under subparagraph 7 never became effective, it is meaningless. Events subsequent to death, a "coffin" or "grave" viewpoint instead of arm-chair approach, can have no bearing upon interpretation: Schmick Estate, 349 Pa. 65; Walker Estate, 376 Pa. 16.

Other pertinent rules are as follows: The position, structure of or sequence of sentences or paragraphs are never allowed to defeat the general intention of testatrix, and we must impute to her words such a meaning as under the circumstances will conform to her probable intention and be most agreeable to reason and justice and not lead to an unnatural or inequitable result: Clark Estate, 359 Pa. 411. Every word or phrase must be considered: Bigony Estate, 397 Pa. 102; Horn Estate, 351 Pa. 131.

Irwin's Estate, 304 Pa. 200, contains three principles applicable here by analogy. The first is that a prior gift in the will, in this instance to George, to a member of a class cannot be relied upon to defeat that member's, his children's, inclusion in the distribution of the residue; on page 202, the court also holds: " 'The use of incorrect or inaccurate language cannot defeat

a testator's plain intent.' " Later, " 'We can attribute no intention to a testator of writing meaningless words in his will when another construction gives such words intelligent and proper meaning.' " See also Bigony Estate, supra.

In Hannach's Estate, 332 Pa. 145, it was held that a construction of a will which gives effect to all parts of the will and rejects no language as surplusage is to be preferred. ". . . technical words must ordinarily be given their legal effect" and we must presume they were conventionally and intelligently employed: Berger Estate, 360 Pa. 366; Baldwin Estate, 377 Pa. 268 (273). Plain words are to be given their ordinary meaning: Hogg's Estate, 329 Pa. 163, 166; Lifter Estate, 377 Pa. 227. Words are not to be inserted or substituted unless the meaning would otherwise be absurd.

Heirs are to be disinherited only if the will so provides in plain language or by necessary implication: Walker Estate, supra, and Bigony Estate, supra. A construction which causes an heir to be disinherited or which works an invidious distinction between heirs is to be avoided if possible: Edelman's Estate, 276 Pa. 503. In Hirsh's Trust Estate, 334 Pa. 172, it was held: ". . . any permissible interpretation is to be preferred which will preserve the equality of benefits among the settlor's three children": Page 177. See also Fox's Estate, 222 Pa. 108; Galli's Estate, 340 Pa. 561; Ziegler Estate, 356 Pa. 93.

In this perspective, we proceed to analyze this will, the pertinent provisions of which, while in places somewhat clumsily drawn and shadowy in character, nevertheless become clear upon close scrutiny, but only if we look for expressions excluding equality among grandchildren and clearly disinheriting George's children. We find no such language. The share before us is directed to become part of the residuary estate, not

part of the trust created in subparagraph 6, "for the benefit of the remaining cestui que trustent in the trusts in this will mentioned and in the proportions hereinabove designated, subject, nevertheless, to the trusts, conditions and limitations hereinabove declared." The phrase "remaining cestui que trustent in the trusts in this will mentioned" includes technical as well as words of common usage. "Cestui que trustent" means beneficiaries, while "trusts" applies to more than one trust, i.e., more than the the trust set up in subparagraph 6. "In this will mentioned" embraces the whole will including subparagraph 7 in common language even though the trust thereunder never became operative. This phrase cannot be regarded as surplusage. Had she intended to limit the cestui que trustent only to the trust in subparagraph 6 or to trusts that became operative, she would have said so by prefacing them with such words as "foregoing" or "above" or "hereinbefore" as she does, when a few words further on, she fixes the quantums or portions of the share distributable to such beneficiaries and the form they shall take ". . . in the proportions hereinabove designated, subject, nevertheless, to the trusts, conditions and limitations hereinabove declared."

Exceptants argue that subparagraph 7 must be excluded from our consideration in determining testatrix' intent because it never became operative; therefore, the will must be given an interpretation so to speak from the grave and not from the posture of a testatrix sitting in her arm-chair. The simple answer is that when testatrix executed her will, she did not then know which of her children would survive her, or predeceasing her, would leave children; she could not predict her own fate or that of her children for a single day. This subparagraph is obviously inserted to provide against the possible lapse of any gift to her children so that should any child predecease her, leaving

children, the share of any such child would *devolve by operation of the will* and not by operation of law under the Wills Act. This is a common phrase in all well-drawn wills. It is one of the most important elements of this case. Had George predeceased testatrix, leaving children, his children would definitely have been entitled to his share but in trust. It follows that since testatrix incorporated subparagraph 7 by reference to cestui que trustent of a trust "in this will mentioned" into subparagraph 6, George's children are among the class of cestui que trustent.

Nor can we, in order to disinherit George's children, give to the plain words "any of my children" an unnatural connotation by breathing into them a possible ambiguity and thereupon to hold them to mean only William, Louisa and Gertrude and to exclude George. Such an unnatural construction is sought by the exceptants who claim that since in subparagraph 6 testatrix refers exclusively to only those three children whose shares are in trust, she uses the words "any of my children" and, therefore, such connotation must be given to the use of the words "any of my children" in subparagraph 7. This interpretation must be rejected. The language is plain, natural and unambiguous. Had testatrix intended the phrase to be limited to William, Louisa and Gertrude, she would have said so. In seeking the construction suggested, the exceptants patently admit that the disinheritance of George's children is not clear and that in order to disinherit them, words that are plain should be declared ambiguous. Lastly, to so hold would render the will inoperative as to George's share had he predeceased testatrix and caused his share, because of the consequent lapse in such an event, to devolve to his children by substitution solely under the operation of the Wills Act, a result to be sedulously avoided: Hannach's Estate, supra.

There is not a single word, line or sentence which clearly, or by necessary implication, disinherits George's children or that points to any invidious distinction between grandchildren *insofar as the distribution of this fund is concerned.* On the other hand, if we apply the principle stated in Hirsh's Trust Estate, supra, that any permissible interpretation is to be preferred which will preserve the equality of benefits among testatrix' children, we readily must sustain the auditing judge's distribution.

Finally, there is no negative or disparaging reference to George's children in this will upon which to base a holding that testatrix dealt unequally with any of her grandchildren such as occurred in Heilbron's Estate, 18 Dist. R. 159, cited by the exceptants, and in Weaver Estate, 390 Pa. 128, where in each case the court found in the will some language or treatment of heirs resulting in an intention to create an unequal distribution among distributees.

Webb's Estate, supra, cited by the auditing judge, is apposite. There, testator gave his residuary estate to his executors to be divided into five equal parts, payment to be made to each of his four daughters of one fifth of the income for their respective lives and upon the death of each of them, the principal to be paid to their respective children, but should any die without children, the share of the one so dying "shall be in like manner held by my executors upon the same trusts as above set forth for my remaining children"; in the next paragraph the one fifth share of Hiram, a son, was given to him absolutely. Upon the death of one of the daughters without children, the court awarded a one fourth share to Hiram's estate. The court construed the word "children" should not be limited to "daughters." In so doing, the court disregarded the argument of counsel for the estates of the predeceased

daughters that the phrase "on the same trusts as above set forth" referred only to daughters. The court said: "But even if it be conceded that these words raise a doubt—and that is all that can be contended—it is not sufficient to overthrow the presumption arising from the other considerations to which we have referred."

Here, George's share was not included in the trust nor was Hiram's in the cited case and, therefore, George's children are in the same position as Hiram's estate. The interpretation of the word "children" in the cited case is analagous to the interpretation of "cestui que trustent" as grandchildren in the instant case. Exceptants argue that in Webb's Estate there is a distinction because Hiram's share was part of the trust, while George's share is not part of the trust. They overlook the fact that had Hiram's share been a part of the trust, there would have been no serious question before the court.

The exceptions are dismissed and the adjudication is confirmed absolutely.