**Lilley Estate**

Before Bolger, Lefever, Saylor and Shoyer, JJ.

## ADJUDICATION

SAYLOR, J., January 21, 1970.—Edward C. Lilley died November 6, 1936, leaving a will, prepared by him without help of counsel, dated January 13, 1936. By its terms he left his residuary estate in trust for his wife, Kathryn C. Lilley, and his three children: Clifford A. Lilley, Lyman R. Lilley and Doris Lilley Kiggins.

Kathryn C. Lilley, testator's second wife whom he married in 1907, died June 27, 1943. Testator had no children by his second wife. His three children were born of his first wife, who died in 1893.

Of testator's three children, Clifford died August 14, 1943, without issue; Lyman died February 14, 1943, survived by a daughter, Margaret Ann Lilley, now Ann Mason; and Doris, the last surviving child and the surviving trustee, died March 14, 1969, without issue. Her death is the reason for the filing of this account.

Kathryn C. Lilley, testator's second wife, had one child by a previous marriage, Richard M. Allen, who is living. At the time of testator's death he was married to Dorothy F. Allen, by whom he had one child,

Dorothy Adele Allen (now Wales). On June 2, 1939, Richard M. Allen and Dorothy F. Allen were divorced, and on July 1, 1939, Richard M. Allen married his present wife, by whom he has one child, Natalie, born in September of 1943. She is not mentioned in testator's will. She is living.

Testator named his wife and his three children as coexecutors and cotrustees. The account of the executors was filed and audited by Bolger, J., and by his adjudication dated February 14, 1944, the trust fund was awarded to Doris Lilley Kiggins, the surviving trustee.

The first account of the surviving trustee was audited in this court before Sinkler, J., and by his adjudication dated January 9, 1948, the trust fund was awarded back to the surviving trustee for the uses and purposes declared by the will.

By the terms of his will, testator left his residuary estate in trust with provisions for payment of annuities to various named persons, all of whom, with the exception of Richard M. Allen and Dorothy F. Allen, are deceased. These two have been since the death of testator's widow entitled to share equally the sum of $1,200 per annum under paragraph ninth of the will. This annuity continues during their lives. The balance of the net income was payable to testator's widow and his three children for their lives. The widow was to receive a maximum amount which could increase according to increases in the amount of total income of the trust, and the daughter, Doris Lilley Kiggins, was to receive at least $1,800 if she became self dependent. These payments were to be made even if it became necessary to use principal.

Upon the death of testator's wife, Kathryn C. Lilley, testator provided in paragraph tenth of his will that the balance of the net income be paid to his three children, share and share alike, except that Doris Lilley Kiggins

should receive $3,000 in the event she was then self dependent.

In paragraph eleventh of his will, testator provided that in the event of the death of any of his children leaving issue, such issue should take by representation the share of income of their deceased ancestor, and, if there were no issue surviving, the share of income of such deceased child shall be added to the shares payable to testator's wife and children then living. Testator then provided as follows:

"I have at the time of the execution of this my last Will, one grandchild, Margaret Ann Lilley, and my wife has one grandchild by a former marriage, Dorothy Adele Allen. At the death of the last surviving child of mine and of my wife Kathryn C. Lilley, I direct that after payment of twenty-five hundred dollars ($2500.00) each to Margaret Boyd and Gussie Boyd, my residuary estate shall be divided into as many equal parts as there may be grandchildren then living, including my wife's grandchild, Dorothy Adele Allen."

Margaret Boyd and Gussie Boyd are both deceased.

Richard M. Allen, through his counsel, contends that the residuary trust continues for his lifetime, and claims one-third of the income therefrom. His request to continue the trust is based on his interpretation of the language of the last sentence of paragraph eleventh, which, it is urged, established the surviving child of Kathryn C. Lilley as a life tenant for the duration of the trust.

Counsel for the accountants, who also represents Ann Lilley Mason and Dorothy Adele Allen Wales, opposes this claim, asserting that paragraph eleventh must be read in conjunction with the will as a whole, and, thus read, must be interpreted as terminating the trust upon the death of the survivor of testator's wife, Kathryn C. Lilley, and of his three children.

A careful study of the entire will with due regard for testator's family situation in 1936 leads to the conclusion that this trust terminated with the death of Doris Lilley Kiggins, and that the principal must be distributed in accordance with the directions contained in the will.

Of the first five paragraphs of the will, four contain provisions benefitting Kathryn C. Lilley. The fifth paragraph is the residuary clause, in which testator gave the residue of his estate in trust with direction that $4,000 of income be paid annually to his wife, Kathryn C. Lilley, and $1,800 of income to his daughter, Doris Lilley Kiggins. After providing for annuities to be paid to certain named cousins who are now dead, testator in paragraphs sixth, seventh and eighth of his will provided for allocations of income among his wife, Kathryn C. Lilley, and his children, Clifford A. Lilley, Doris Lilley Kiggins and Lyman R. Lilley, Four times in these three paragraphs testator refers to his wife and his three children by name in directing disbursement of income, as the annual amount of income of the trust might reach above certain designated levels. Never once is this group enlarged by mention of another person nor by the use of any significant term. Thus, it is clear that when testator came to write paragraph ninth and the later paragraphs of his will, the income beneficiaries of his residuary trust were firmly fixed by the will itself to be his wife and his own three children.

Richard M. Allen appears in the will for the first and only time in paragraph ninth, wherein testator first contemplated the death of his wife. In this paragraph, testator directed that upon the death of his wife an annuity of $1,200 be paid in equal shares to Richard M. Allen and his wife, Dorothy F. Allen, Cincinnati, Ohio. In the same paragraph testator directed payment of a $1,000 annuity to "my sister

Mary Lilley Boyd," and upon her death to her daughters. In paragraph tenth, testator directed that "the balance of net income of my estate, after the death of my wife, Kathryn C. Lilley, shall be paid to my children, Clifford A. Lilley, Doris L. Kiggins and Lyman R. Lilley, share and share alike. . . ." Thus, testator reconfirmed his previously manifested intention to make his wife and his three children, and no one else, the income beneficiaries of the residuary trust.

Does the language of paragraph eleventh change the testamentary intention, already revealed?

Reading the last sentence of paragraph eleventh according to grammatical usage "the last surviving child of mine and of my wife" might be understood to mean children of testator's wife as well as of himself. However, testator was not an attorney and the precision of expression which might be expected of a lawyer is not to be expected of a layman. The quoted words are the only language in the entire will which lend any support to the proposed interpretation that testator intended the residuary trust to continue for the life of the child of his wife. This interpretation, however, is clearly overshadowed by the intention of testator apparent from the will as a whole. Five times throughout the will testator saw fit to mention those who were to share the income of the residuary trust. He listed the beneficiaries by name but never listed Richard M. Allen by name, nor by any reference which would identify him as one of the group of income beneficiaries with his mother and testator's three children.

In determining a testator's intention, the court should place itself as nearly as possible in his position and should take into consideration the situation of testator, the facts and circumstances surrounding him when the will was executed, his relation to the bene-

ficiaries, their condition or necessities: Clark Estate, 359 Pa. 411, 419 (1948); Jackson Estate, 337 Pa. 561 (1910); McGlathery's Estate, 311 Pa. 351 (1933). Reading this will with these rules in mind, the conclusion is inescapable that testator established the residuary trust for the benefit of his wife, Kathryn C. Lilley, and his three children: Clifford A. Lilley, Lyman R. Lilley and Doris Lilley Kiggins. Testator did not intend to include the child of his wife. With the death of Doris Lilley Kiggins the trust terminates and the principal thereof is now distributable to the remaindermen.

Natalie Allen, daughter of Richard M. Allen, born in 1943 to his second wife, has claimed a one-third share of the principal. Ann Lilley Mason, testator's granddaughter, and Dorothy Adele Allen Wales, granddaughter of testator's wife, both of whom are mentioned in paragraph eleventh of the will, oppose Natalie Allen's claim and request distribution to themselves in equal one-half shares.

Natalie Allen's claim is based on the language used by testator in paragraph eleventh of his will, wherein he directed that "my residuary estate shall be divided into as many equal parts as there may be grandchildren then living, including my wife's grandchild, Dorothy Adele Allen." Dorothy Adele Allen is twice mentioned in paragraph eleventh, both times as the grandchild of testator's wife. At the time the will was executed, and at the time of testator's death, she was the only grandchild of testator's wife. At that time, her father was about 40 years of age and presumably capable of having other children.

In disposing of this question, testator's dominant intention reflected by his will in its entirety must be borne in mind. When testator undertook to write paragraph eleventh of his will, he had already made

clear that the beneficiaries of the residuary trust were his three children and his wife, Kathryn C. Lilley. After providing for payment of income to their survivors, testator came finally to the disposition of his residuary estate. He noted that he had one grandchild, whom he named, and that his wife had one grandchild by a former marriage, whom he likewise named. Then, after providing for legacies to named legatees, he directed that his residuary estate be divided into as many equal parts as there might be grandchildren then living, including "my wife's grandchild, Dorothy Adele Allen." At the time the will was executed, testator's "grandchildren" consisted solely of Margaret Ann Lilley (now Ann Mason). His three children were then living and additional grandchildren were possible. Testator recognized that the number of his grand-children might be increased at the time of his death, but the only sources of additional grandchildren which are noted throughout his will are his own three children. He did not recognize Dorothy Adele Allen as a grandchild nor even include her among his grand-children. He merely directed that she be included with his grandchildren living at the time of his death for the purpose of dividing and distributing the residue. It is inconceivable that testator would reduce the number and the size of the parts of residue to be paid to his children's children by admitting to the number of his grandchildren a family totally strange to his blood. Such a result is unnatural and is not to be implied in the absence of a clear intent to make such a disposition: Estate of Sarah R. Lamberton, 105 Pa. Superior Ct. 348 (1952). The claim of Natalie Allen to share in the residue of the estate must be rejected: . . .

And now, January 21, 1970, the account is confirmed nisi.

## Sur EXCEPTIONS TO ADJUDICATION

*Pepper, Hamilton & Scheetz,* for accountants, Ann Lilley Mason and Dorothy Adele Allen Wales.

*Montgomery, McCracken, Walker & Rhoads,* for Natalie Allen.

*Alan Reeve Hunt,* for Richard M. Allen.

*Francis Shunk Brown, 3rd,* for guardian and trustee ad litem.

SHOYER, J., April 23, 1970.—Exceptants' argument in support of a continuance of this testamentary trust rests almost entirely on the sentence: "At the death of the last surviving child of mine and of my wife Kathryn C. Lilley . . . my residuary estate shall be divided . . ." Sentence structure and grammatical accuracy would have the words "of my wife Kathryn C. Lilley" modify the nearest noun "child." But this is one sentence only in a six-page, 14-paragraph will drawn by testator, a layman, not a lawyer. Admittedly, two alternative constructions are possible: (1) testator was referring to a possible child of his existing union with his second wife, which was scarcely his intention because of his advanced age and their long childless marriage, or (2) termination of the trust is to occur upon the death of the last survivor of his three children and his wife, the four named income beneficiaries.

Our Supreme Court has recently reiterated that in solving a problem of will construction we must "bear in mind certain well settled principles in this area of the law: (a) the duty of the court is to ascertain, if possible, the intent of the testator (Burleigh Estate, 405 Pa. 373, 376, 175 A. 2d 838 (1961); Moltrup Estate, 424 Pa. 161, 170, 225 A. 2d 676 (1967)); (b) the court must garner, if possible, the intent of the

testator from a consideration of *all* the language contained in the four corners of the will, together with all the surrounding and attendant circumstances and from the scheme of distribution and not merely from isolated clauses or provisions of the will (Vandergrift Estate, 406 Pa. 14, 26, 177 A. 2d 432 (1962); Grier Estate, 403 Pa. 517, 525, 526, 170 A. 2d 545 (1961)); (c) ' [w]hen a decedent drafts a last will and testament, he is presumed, in the absence of an indication to the contrary, to have intended to dispose of his entire estate and not to die intestate as to any part of it' and a construction should be adopted that would avoid an intestacy unless such construction would do violence to the language of the will: Farrington Will, 422 Pa. 164, 168, 220 A. 2d 790 (1966) and authorities cited therein . . . :" Hill Estate, 432 Pa. 269, 272 (1968). Furthermore, we should avoid "giving a too literal construction to the language of holographic wills, indeed, of any wills": Lippincott Estate, 276 Pa. 283, 288; for while "[t]he search is confined to [testator's] language, . . . its object is still his meaning:" Woelpper's Appeal, 126 Pa. 562, 572.

A thorough study of this whole will from its four corners, and with due consideration of the circumstances surrounding testator when he wrote it, leads us to the conclusion that the learned auditing judge was correct in holding this trust has now terminated with the death of testator's wife and *his* last surviving child, Doris Lilley Kiggins.

Exceptants would continue the trust for the life of testator's stepson, Richard M. Allen, who is not mentioned as a beneficiary until testator comes to provide for distribution of income following the death of Richard's mother. He is then given a joint annuity with his wife, Dorothy, of but $1,200. Never is he mentioned

as a life tenant along with testator's wife and three children who are expressly designated in paragraphs sixth, seventh and eighth. As well stated by Judge Saylor, the learned auditing judge:

". . . Four times in these three paragraphs the testator refers to his wife and his three children by name in directing disbursement of income, as the annual amount of income of the trust might reach above certain designated levels. Never once is this group enlarged by mention of another person nor by the use of any significant term. Thus it is clear that when the testator came to write paragraph ninth and the later paragraphs of his will the income beneficiaries of his residuary trust were firmly fixed by the will itself to be his wife and his own three children.

"Richard M. Allen appears in the will for the first and only time in paragraph ninth, wherein the testator first contemplated the death of his wife. . . ."

In marked contrast with his designation of every other beneficiary, including his sister and cousins, testator never mentions Richard's relationship, viz., that of stepson. When he names Dorothy Adele Allen as a residuary beneficiary, he states her relationship as "my wife's grandchild," not "the daughter of my stepson, Richard." It is as though the mention of Richard's relationship caused him pain. Certainly, he gave no thought to this stepson, the stating of whose relationship he spurned, as a desirable life tenant. He never even refers to Richard as the son of his wife, Kathryn. Since Richard was the only child Kathryn ever had, or was likely to have, because testator was 75 years old when he wrote his will, and Kathryn, widowed in 1898, had borne him no child in their 29 years of marriage, it is inconceivable that testator was thinking of any child of Kathryn's as a measuring life for his residuary trust.

Furthermore, we must realize that Richard can be accepted as a measuring life only by the elimination of his mother, testator's wife, Kathryn. This would mean that testator intended by this one ambiguous clause that income to his wife should cease upon the death of *his* three children and *her* son, Richard, even though *she* was still living. Since Kathryn is mentioned as an income beneficiary of the residuary estate no less than eight times, this substitution poses a contradiction so incongruous as to defy serious contemplation.

As to the claim of Natalie Allen to be included among the remaindermen, we hold with the learned auditing judge that testator in his eleventh paragraph has clearly identified and distinguished his "one grandchild" from the "one grandchild" of "my wife." Later, in the same paragraph, he confirms this distinction when he designates the remaindermen. Instead of generalizing by grouping the class as "my" or "our grandchildren," he carefully divides his residuary estate "into as many equal parts as there may be grandchildren then living, including my wife's grandchild, DOROTHY ADELE ALLEN." It is obvious that he has separately named his wife's grandchild because he recognized she was not a member of the class composed of his own grandchildren.

For the reasons set forth above, as well as those stated by the learned auditing judge, the exceptions are dismissed and the adjudication is confirmed absolutely.