**Ellis Estate**

*Morris H. Goldman* and *Leonard J. Cooper, for Wolf, Block, Schorr & Solis-Cohen,* for accountants.

*William T. Adis* and *Jacob W. Allen,* for remainderman.

*Edward J. Quinn,* for guardian ad litem.

SILVERSTEIN, J., August 12, 1971.—This trust arises under the will of Edwin J. Ellis who died December 25, 1965, whereby he directed that the residue of his estate be divided into two fractional shares, one to be known as the "marital portion" and the other as the "nonmarital portion."

The income from the marital portion is to be paid to testator's wife for life together with "such portions of the principal of the trust as (she) may in writing request from time to time . . ." with a general power of appointment in his wife exercisable by will. In default of appointment, the principal of the marital portion becomes part of the nonmarital portion.

With respect to the nonmarital portion, testator provided that the income shall be accumulated and added to principal "As long as there is any balance remaining in the Marital Portion . . ." He provided, further, that "After the Marital Portion shall have become exhausted, all of the income of the Nonmarital Portion shall be paid to my wife during her lifetime . . ." together with ". . . such portions of the principal of the Nonmarital Portion as my wife shall in writing request from time to time; provided, however, that the aggregate of the withdrawals in any calendar year shall not exceed Five Thousand Dollars ($5,000.-00) or five percent (5%) of the undistributed principal, whichever is the greater sum." The trustees are authorized to distribute additional sums from principal of the nonmarital portion for the support and maintenance of testator's wife. The nonmarital trust

terminates upon the death of the wife and the remaining principal is to be distributed in the following manner: "(1) Any stock held in the trust of Jacob Ellis Realties, Inc., and any indebtedness owing by said corporation to the trust shall be distributed to my sister, Eleanor E. London, provided she is then living; and (2) all the balance thereof and all undistributed income, and stock and indebtedness of Jacob Ellis Realties, Inc., if my sister is not then living, shall be distributed to my nephew, Jack N. Sheppard, Jr., or if he is not then living, to his issue then living per stirpes."

This accounting of the nonmarital portion is filed by reason of the order of Administrative Judge Klein dated March 17, 1970.

At the audit of the executors' account before Burke, J., the accountants, pursuant to written demand, requested distribution to Agnes B. Ellis, the widow, of the entire principal of the marital portion and five percent of the undistributed principal of the nonmarital portion. Jack N. Sheppard, Jr., by his counsel, objected to the payment of any principal from the nonmarital portion but raised no objection to the distribution of the marital portion to Agnes B. Ellis. The auditing judge properly denied the request for payments from principal of the trusts because the audit of the executors' account is not the proper time to decide controversies concerning such requests. He went on to state that "Until the marital trust is established and the assets thereof set aside in accordance with the provisions of the will it is impossible to know the extent of the widow's claim. Indeed it is essential that the marital trust be set up to exonerate the general assets of the estate. Since the widow's demand affects the interests in remainder, all parties, including minors, unborn

persons and other unascertained interests should be represented. All of this may be done more properly at the audit of the trustees' account."

The adjudication did, however, award the marital portion to the trustees "subject to the request of Agnes B. Ellis for payment to her of the principal of the trust . . ." On this authority, the trustees filed a schedule of distribution showing the allocation of assets to the marital portion as provided in the will and showing that they had distributed the marital portion to Agnes B. Ellis as follows: $115,000 in March of 1968 and the remaining balance of $174,-947.78 at the time of filing the schedule. The schedule of distribution was approved by Burke, J., on August 5, 1969. No objections to the schedule of distribution were filed.

On October 29, 1969, the widow filed a petition in which she asked for a citation, directed to the three trustees, decedent's sister, Eleanor E. London, and Jack N. Sheppard, Jr., to show cause why the said trustees should not forthwith distribute to her five percent of the principal of the nonmarital portion for each of the years 1967, 1968 and 1969 and all of the income from and after September 5, 1967, the date of her written request, to the trustees. As a result of the proceedings thus instituted, Administrative Judge Klein entered an order directing the filing of the present account and ordering the trustees to forthwith petition for the appointment of a guardian ad litem for the issue of Jack N. Sheppard, Jr., who are minors and a trustee ad litem for those who are unborn and unascertained. Pursuant to that direction a petition was filed and Edward J. Quinn, Esq., was appointed guardian-trustee ad litem. His report recommending confirmation of the account as stated is annexed. His position concerning the widow's request is discussed hereinafter.

At the audit of the trustees' account, the widow renewed her request for payment from principal of the nonmarital trust of five percent of the principal for the years 1967 to date and for income from September 5, 1967, to date. Jack N. Sheppard, Jr., and Mr. Quinn, the guardian ad litem, oppose the widow's request, basing their objection primarily on the language of paragraph seventh of the will which provides, in pertinent part, as follows:

"(a) *As long as there is any balance remaining in the Marital Portion,* all of the income of the Non-marital Portion shall be accumulated and added to principal.

"(b) *After the Marital Portion shall have become exhausted,* all of the income of the Nonmarital Portion shall be paid to my wife during her lifetime . . .

"(c) In addition to the income, there shall be distributed to my wife, *after the Marital Portion shall have become exhausted,* such portions of the principal of the Nonmarital Portion as my wife shall in writing request from time to time; provided, however, that the aggregate of the withdrawals in any calendar year shall not exceed Five Thousand Dollars ($5,000.00) or five percent (5%) of the undistributed principal, whichever is the greater sum." (Emphasis supplied.)

The remainderman and guardian ad litem contend that testator "did not intend that (the Marital Portion) should be deemed exhausted merely because (it is) not placed in trust and transferred to the widow in a lump sum." The remainderman and guardian ad litem contend that the "exhaustion" contemplated by testator refers to the assets of the trust whether they are in the hands of the trustee or the widow. Under the interpretation proposed, the widow would have to show that she no longer has the assets which were allocated to the marital portion before she would be

entitled to any income or principal from the nonmarital portion.

The principles enunciated in Burleigh Estate, 405 Pa. 373 (1961), are regarded as the keystone of testamentary interpretation in this State. In that case, Mr. Chief Justice Bell said, at page 376:

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts . . ."

Looking first at the scheme of distribution, it is clear that the widow was the primary object of testator's affections and his bounty. She is given all the income from the marital portion and the absolute right to request the entire principal of the marital portion in writing. She, in fact, exercised this right and no party has taken exception to the payment to her of the entire amount in the marital portion. During the period in which there is any balance remaining in the marital portion, the income from the nonmarital portion is to be added to the principal, not distributed to the remainderman. After the marital portion is exhausted, the entire income from the nonmarital portion is payable to the widow and, in addition, "there shall be distributed" five percent or $5,000 per year to her. The trustees are given discretion to distribute additional principal to the widow for her support and maintenance. Only after all of above payments and the death of the widow do the remaindermen share in the "undistributed balance of principal."

Several things are evident from the scheme of distribution. First, no restriction whatever is placed

upon the right of the widow to take the principal of the marital portion. She is not required to show need or to apply the principal for her personal use or support. Second, she is not restricted to using the principal during her lifetime. The will gives her the power to appoint any balance remaining in the marital portion at her death to whomever she chooses. The remaindermen of the nonmarital portion have no rights in the marital portion unless the widow fails to withdraw or appoint the principal. Third, the distribution of five percent or $5,000 of principal of the nonmarital portion to the widow is mandatory and not discretionary: "there shall be . . ."

Turning, then, to the meaning of the phrase "After the Marital Portion shall have become exhausted," within the context of the will it is clear that testator contemplated that his widow would make withdrawals from the marital portion. She is not restricted to making a specific number of withdrawals or to a time when withdrawals could be made. It was in the contemplation of testator that there would be a number of withdrawals. After each withdrawal there would be a balance remaining in the marital portion. Thus, in paragraph seventh (a), testator provided that "As long as there is any balance remaining in the Marital Portion, all of the income of the Nonmarital Portion shall be accumulated and added to the principal." Then, in seventh (b) and (c), testator provided that "After the Marital Portion shall have become exhausted . . ." the income and principal are payable to the widow. Construing the various paragraphs and subsections consistently and in conjunction with each other (Greer Estate, 403 Pa. 517, 525-26 (1961)), it is clear that the exhaustion of the marital portion contemplated in subparagraphs seventh (b) and (c) means no "balance remaining

in the Marital Portion." Accordingly, I find as a matter of fact and law that the marital portion became exhausted when the assets were delivered to Agnes B. Ellis, the widow, and her rights in the non-marital portion accrued at that time.

The cases cited by Mr. Quinn, the guardian-trustee ad litem, holding that a life tenant with a power to consume principal must consume the principal in good faith and not for the purpose of defeating the intention of testator are inapposite in the instant case. The widow is given an absolute right to dispose of the principal of the marital portion and owes no duty to anyone to consume the same for her sole benefit or to make any showing of need prior to withdrawing the same. The payment of principal from the non-marital portion is mandatory upon the trustees and not subject to any qualification except as to amounts in excess of five percent or $5,000 per annum.

Mr. Adis, counsel for Jack N. Sheppard, Jr., the remainderman, relies upon the fact that testator directed that the stock in Jacob Ellis Realties, Inc. be allocated to the nonmarital portion to show that testator did not intend to permit his widow to take the assets of the family business. I agree that one of the purposes of testator was to protect the family business for his sister, Eleanor E. London, as long as possible. I find that this purpose was secondary to the intent to provide his widow with the right to take income and principal from the marital portion and thereafter from the nonmarital portion, to the extent provided, without restriction of any kind.

Agnes B. Ellis, the widow, requests that her right to income and principal from the nonmarital portion be considered as having accrued on September 5, 1967, the day that she submitted her written request for distribution of the marital portion to the executors. The language of paragraph seventh of the will

makes it clear that the widow's rights in the nonmarital portion are conditioned upon an actual exhaustion of the marital portion. Judge Burke's adjudication of the executors' account was promptly filed on November 3, 1967, after audit held on October 9, 1967. The schedule of distribution ordered in that adjudication was not filed until 1969 and was approved on August 5, 1969. The actual distribution of the remaining balance of the marital portion was not completed until October 1969. No reason appears for the delay in filing the schedule of distribution. However, no claim has been made by the widow, one of the three executors and trustees, of intentional or improper delay in the filing of the schedule of distribution and distribution of assets. Until final distribution was made, there remained a balance in the marital portion. I find that under the provisions of this will, the right of the widow, Agnes B. Ellis, to income from the nonmarital portion accrued on the date final distribution of the balance of the marital portion was made to her. The awards will be made accordingly . . .

And now, August 12, 1971, the account is confirmed nisi.